IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


R.M. DELEVAN, INC. and : 
SUSQUEHANNA LOCOMOTIVE AND :
RAILCAR REPAIR SERVICES, INC., :
:
               Plaintiffs, :
   v. :
:
                    : Case No. 3:11 cv 119
NEW YORK SUSQUEHANNA AND : Judge Mariani
WESTERN RAILWAY CORPORATION, :
:
            Defendant. :


## DEFENDANT'S BRIEF IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT


BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202

*~and~*

CAVERLY, SHEA, PHILLIPS and
    RODGERS
15 Public Square
Suite # 210
Wilkes-Barre, PA 18701

*Attorneys for Defendant New York*
*Susquehanna and Western Railway*
*Corp.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................... i

PRELIMINARY STATEMENT ................................................ 1

PROCEDURAL HISTORY ...................................................... 1

STATEMENT OF QUESTIONS INVOLVED ............................. 2

STATEMENT OF FACTS

    I.  Rental Arrears ............................................................ 3

    II.  The Derailment and Subsequent Settlement ................. 7

    III.  RMDI's Failure to Remove the Damaged Railcars ........ 10

SUMMARY JUDGMENT STANDARD .................................... 12

ARGUMENT

    I.  NYSW IS ENTITLED TO JUDGMENT ON ITS
        COUNTERCLAIMS FOR STORAGE FEES, BECAUSE
        THERE IS NO TRIABLE ISSUE OF FACT
        REGARDING RMDI'S OBLIGATION TO PAY
        FOR STORAGE OF THE FIVE DAMAGED RAILCARS
        OR ITS FAILURE TO MAKE THE REQUIRED
        PAYMENTS TO NYSW ..................................................... 12

        A.     NYSW is entitled to summary judgment on its
             breach of contract counterclaim........................... 12

B.    NYSW is entitled to summary judgment on it
unjust enrichment counterclaim........................... 14

C.    NYSW is entitled to summary judgment on its
account stated counterclaim............................... 15

II.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM
MUST BE DISMISSED BECAUSE NYSW WAS NOT
UNJUSTLY ENRICHED AND THE CLAIM IS
PRECLUDED BY THE PRIOR NEW YORK
JUDGMENT AND BASED ON ESTOPPEL.................... 17

A.    NYSW was not unjustly enriched, as there
was an underpayment of rent by Plaintiffs,
not an overpayment........................................... 17

B.    Plaintiffs' unjust enrichment claim is
precluded by the prior New York judgment
for rental arrears under the Lease..................... 19

C.    Plaintiffs cannot make out a triable unjust
enrichment claim based on the doctrine
of estoppel...................................................... 20

III.  PLAINTIFFS' NEGLIGENCE CLAIM MUST BE
DISMISSED AS A MATTER OF LAW.......................... 21

A.    Plaintiffs cannot maintain a negligence
claim seeking only economic loss...................... 22

B.    Plaintiffs' negligence claim is barred by
Pennsylvania's two-year statute of
limitations...................................................... 23

C.    NYSW did not owe a duty of care to
plaintiffs........................................................ 25

D.   NYSW settled the derailment issue with
the owner of the cars and was released
from any and all liability ..................................... 25

E.   Plaintiffs did not lose a $150,000.00
commission as a result of the derailment ........... 26

IV.  PLAINTIFFS' CLAIM FOR INTENTIONAL
INTERFERENCE WITH CONTRACT MUST BE
DISMISSED AS A MATTER OF LAW .......................... 26

V.   PLAINTIFFS HAVE FAILED TO MAKE OUT A
TRIABLE ASSUMPSIT CLAIM ..................................... 30

CONCLUSION .................................................................... 31

APPENDIX

# TABLE OF AUTHORITIES

**Page**

**CASES**

Aikens v. Baltimore and O.R. Co.,
348 Pa. Super. 17 (1985)................................................22, 23

Azur v. Chase Bank,
USA, 601 F.3d 212 (3d Cir. 2010) ...................................23

Brown v. CRK Contracting of Suffolk, Inc.,
100 F. Supp.2d 323 (E.D. Pa 2000)................................19

Brokerage Concepts, Inc. v. U. S. Healthcare, Inc.,
140 F.3d 494 (3d Cir. 1998) ............................................27

Canfield v. Harris,
252 N.Y. 502 (1930)..........................................................19

Computer Support, Inc. v. Booker Transportation Services,
Inc.,
2009 U.S. Dist. LEXIS 81790 (M.D. Pa. 2009) .........12, 16

Connoly Epstein Chicco Foxman Engelmyer & Ewing v. Shotz,
Miller, Glusman, Footer & Magarick, P.C.,
1995 U.S. Dist. LEXIS 17231 (E.D. Pa 1995) .............16, 20, 21

Drames v. Sun River Investment,
820 F.Supp. 209 (E.D. pa 1993) .....................................25

Lawson v. CSX Corporation and CSX Transportation, Inc.,
1999 U.S. Dist. LEXIS 14923 (E.D. Pa. 1999)...........27, 28

Metso Paper USA, Inc. v. Bostik, Inc.,
2011 U.S. Dist LEXIS 73629 (M.D. Pa. 2011) ...............23

Moore v. Deal,
240 F. Supp. 1004 (E.D. Pa. 1965)..................................19

New Castle County v. Halliburton Nus Corp.,
111 F.3d 1116 (3d Cir. 1997) ...........................................24

Prudential Lines, Inc. v. Fireman's Insurance Company of
 Newark, et al.,
 91 A.D.2d 1 (1st Dept. 1982) ................................................ 19

PSC Info Group v. Lason, Inc.,
 681 F. Supp. 2d 577 (E.D. Pa. 2010) ................................. 28

Serafini, et al., v. Mariani,
 2010 U.S. Dist. LEXIS 31819 (M.D. Pa. 2010) ......................... 14, 17

Stoeckinger v. Presidential Financial Corp. of Delaware,
 948 A.2d 828 (Pa. Sup. Ct. 2008) ..................................... 18

Styer v. Hugo,
 422 Pa.Super. 262 (1993) ..................................... 14, 17

**STATUTES**

28 U.S.C. § 1738 ......................................................... 19

## PRELIMINARY STATEMENT

Defendant New York Susquehanna and Western Railway Corporation ("NYSW") seeks an order and judgment pursuant to Fed.R.Civ.P. 56 granting NYSW summary judgment on its counterclaims against plaintiff R.M. Delevan, Inc. ("RMDI") for $138,803.50 plus interest and costs based on RMDI's failure to remit storage fees to NYSW and dismissing plaintiffs RMDI and Susquehanna Locomotive and Railcar Repair Services, Inc.'s ("SLRRS") (collectively "plaintiffs") Complaint in its entirety.

## PROCEDURAL HISTORY

After failing to make rental payments for months on end, and faced with NYSW's October 15, 2010 and December 10, 2010 notice of default and notice to vacate the premises in Utica, New York leased from NYSW[1], plaintiffs commenced this preemptive and anticipatory action in the Pennsylvania Court of Common Pleas, Luzerne County on December 16, 2010.  NYSW removed the action to this Court based on diversity of citizenship on January 18, 2011, and interposed its Answer with Counterclaims on January 25, 2011.  RMDI defaulted on NYSW's Counterclaims and did not

---

[1] See Wright Declaration, Exhibit H (Exhibits "D" and "F").

respond to NYSW's Counterclaims until December 9, 2011, after NYSW filed its motion for summary judgment.

## STATEMENT OF QUESTIONS INVOLVED

1.      Whether NYSW is entitled to summary judgment on its counterclaims for recovery of amounts owed for storing RMDI's railcars, where has RMDI admitted it contracted for their storage, received monthly invoices for storage, acknowledged receipt of the invoices, acquiesced to them in writing, and failed to ever object to NYSW's invoices.

2.      Whether plaintiffs have failed to establish a triable claim for unjust enrichment where the record demonstrates that plaintiffs did not confer a benefit on NYSW, but instead failed to pay NYSW the amount of rent due under a lease, and NYSW obtained a judgment in a separate action against plaintiffs based on this failure.

3.      Whether plaintiffs have failed to establish a triable negligence claim based on NYSW's alleged negligence in 2006 related to transporting railcars that were not then owned by plaintiffs and where NYSW entered into a settlement agreement regarding the

alleged negligence with the owner of the railcars and received a release from liability.

4.     Whether plaintiffs have failed to establish a triable claim for intentional interference with contractual relationship where the record is undisputed that NYSW was not aware of plaintiffs' alleged contractual relationship and did nothing to intentionally harm plaintiffs or their alleged contractual relationship.

5.     Whether plaintiffs have failed to establish a triable assumpsit claim where the undisputed record evidence, including the documentation plaintiffs purportedly rely on to support their claim, establishes that plaintiffs owe NYSW money.

## STATEMENT OF FACTS

### I.     Rental Arrears

NYSW is a corporation that operates railroad track transporting a wide variety of commodities such as fee ingredients, lumber, and other building materials.  www.nysw.com.  RMDI is a corporation engaged in the business of performing repair work on locomotives, among other things.  Deposition Transcript of Ronald M. Delevan, p. 30, attached to the Declaration of James P. Wright,

3

Jr., dated December 7, 2011 ("Wright Dec.") as Exhibit E ("Delevan Dep. Tr.").

In September of 2001, RMDI and NYSW entered into an Interim Operating License (the "Lease") governing RMDI's lease of NYSW's facility located in Utica, New York (the "Premises"). RMDI used the Premises to repair, maintain, assemble, and disassemble railroad equipment. Declaration of Nathan R. Fenno, dated December 5, 2011, ¶ 2, 4 ("Fenno Dec."). Under the original Lease, RMDI was obligated to remit monthly rental payments to NYSW in the amount of $1,500.00 plus 5% of RMDI's gross profit from operations conducted at the Premises. See §§ 4.3 and 4.4 of the Lease attached to Fenno Dec. as Exhibit A.

At some point, RMDI allegedly orally assigned its rights under the Lease to SLRRS. Complaint at ¶ 6 (Docket #1). Both companies engaged in similar work, including locomotive repairs. Delevan Dep. Tr. pp. 26-27, 30. Ronald M. Delevan is the President and sole shareholder of RMDI and SLRRS. Id., pp. 24, 27-29. He formed SLRRS for tax purposes. Id., p. 31. Currently, SLRRS has no employees, no principal location, and its only mailing address, to the extent it has one, is the same as RMDI – Coxton Rail Yards,

Coxton Road, Duryea, PA.  Delevan Dep. Tr., p. 28-29; Complaint at

¶ 2 (Docket #1).

As part of its work at the Premises, plaintiffs performed repairs

on NYSW's locomotives.  Often the amount plaintiffs charged for

this locomotive work was simply deducted from the amount of rent

plaintiffs owed to NYSW.  Fenno Dec., ¶ 7.

In or about January, 2002, NYSW and Ronald Delevan agreed

to modify the rent due under the Lease, so that, instead of paying

monthly rent of $1,500.00 plus 5% of gross profits, plaintiffs would

pay monthly rent of $2,500.00.  Fenno Dec., ¶ 8; Delevan Dep. Tr.,

pp. 46, 49, 55-56.  Beginning in February 2002, NYSW's monthly

invoices to plaintiffs consistently provided that the rent was

$2,500.00, with no additional amount due for a percentage of

plaintiffs' gross profits.  Fenno Dec., ¶9, Ex. B.

Plaintiffs never objected to the $2,500.00 monthly rental

invoices from NYSW.  (Delevan Dep. Tr., pp. 56-57), and periodically

paid NYSW the $2,500.00 monthly charge, less the amount owed by

NYSW for locomotive work performed by plaintiffs.  Fenno Dec., ¶

10, Ex. B.

On November 30, 2007, the $2,500.00 monthly rental agreement was reconfirmed in an email from Nathan Fenno, NYSW's President, to Ronald Delevan. Fenno Dec, ¶ 14, Ex. D. After this email, the parties continued to operate under the agreement that monthly rent equaled $2,500.00 per month. Delevan Dep. Tr., p. 56.

NYSW continued to invoice plaintiffs for rent in the amount of $2,500.00 per month. Plaintiffs either paid the rent or it was offset by amounts due from NYSW related to locomotive work performed by plaintiffs. This practice continued through December of 2009 when plaintiffs' ceased making any rental payments. Fenno Dec., ¶ 15, 17, Ex. B, F.

In October of 2010, with plaintiffs significantly in rental arrears, Nathan Fenno sent a letter to Ronald Delevan terminating the Lease and requesting that plaintiffs vacate the Premises by December 15, 2010. Fenno Dec., Ex. G. Plaintiffs failed to vacate the Premises, and NYSW commenced an eviction proceeding in Utica City Court seeking a warrant of eviction and a judgment for back rent and other damages. Wright Dec., Ex. H; Fenno Dec., ¶

17.).  On March 16, 2011, a warrant evicting plaintiffs from the Premises was entered by the Utica City Court.  Fenno Dec., Ex. H.

NYSW's claim for unpaid rent was set for trial in Utica City Court.  Fenno Dec., Ex. H.  The trial was initially adjourned, and then became moot after Ronald Delevan signed an Affidavit for Confession of Judgment on behalf of plaintiffs, confessing judgment in the amount of $20,000.00 to NYSW.  In the Affidavit of Confession of Judgment, plaintiffs acknowledge that $20,000 in rental arrears is due and owing to NYSW in connection with plaintiffs' lease of the Premises.  Wright Dec., Ex. I (¶ 6).  On September 29, 2011, NYSW entered the Judgment by Confession against plaintiffs in the amount of $20,081.00 with the Utica City Clerk.  Wright Dec., Ex. J.  To date, plaintiffs have failed to satisfy any portion of this Judgment.  Wright Dec., ¶ 12.

## II.  **The Derailment and Subsequent Settlement**

Sometime in the first half of 2006, Power Source Supply ("Power Source") purchased thirty-four railcars (the "Railcars") from a New Jersey scrap dealer, Colantuono & Klurman Associates, a sale allegedly brokered by RMDI.  Delevan Dep. Tr., pp. 61-62. NYSW agreed with Power Source to transport its Railcars along

NYSW's railway from Hawthorne, NJ to Binghamton, NY.  On June 23, 2006, NYSW issued "Freight Quote 4215" to Power Source, which governed the transportation and storage of the Railcars.  The agreement expressly provided that NYSW would be held harmless for any damage incurred while the cars were on the NYSW railway. <u>Declaration of Tabetha Rathbone</u>, dated December 6, 2011, Ex. A, B. ("<u>Rathbone Dec.</u>").

On July 19, 2006, five of the thirty-four Railcars derailed near Lanesboro, Pennsylvania (the "Damaged Railcars").  <u>Rathbone Dec.</u>, Ex. C.  The remaining 29 Railcars arrived in Binghamton, NY and were eventually sold by Power Source to Utah Transit Authority ("UTA") on September 25, 2006.  <u>Rathbone Dec.</u>, Ex. F-G.; <u>Delevan Dep. Tr.</u>, p. 72.

Following the derailment, Power Source initially withheld payment to NYSW under "Freight Quote 4215".  Eventually, in December 2006, Power Source and NYSW reached a settlement with respect to the derailment and the Damaged Railcars.  Pursuant to the settlement agreement, Power Source paid NYSW less than the full amount due under the freight quote and Power Source released

NYSW from any and all liability for damage to its Railcars.
Rathbone Dec., Ex. D-E, G.

Prior to Power Source's sale of the Railcars to UTA, RMDI allegedly entered into an agreement with Power Source, whereby RMDI agreed to provide mechanical and movement expertise and to perform some work on the Railcars to prepare them to be sold to UTA. Delevan Dep. Tr., pp. 66-68; Wright Dec., Ex. D. In exchange for this, Power Source allegedly agreed to provide RMDI with a $225,000 commission out of the proceeds of the sale of the Railcars to UTA. Delevan Dep. Tr., pp. 66-69; Wright Dec., Ex. D.

According to Ron Delevan, Power Source claimed that its profit on the eventual sale of the 29 Railcars to UTA was less than expected, and therefore, it reduced RMDI's commission to $187,000. Delevan Dep. Tr., p. 73. Then, in January of 2007, pursuant an agreement, Power Source transferred ownership of the five Damaged Railcars to RMDI in lieu of the $187,000 commission. Delevan Dep. Tr., p. 73; Wright Dec., Ex. D. Thus, after the derailment and NYSW's settlement with Power Source, RMDI became the owner of the five Damaged Railcars. Delevan Dep. Tr., pp. 73, 86, 102; Wright Dec. Ex. D; Complaint, ¶ 18.

9

## III.   RMDI's Failure to Remove the Damaged Railcars

After RMDI became their owner, the five Damaged Railcars remained on NYSW's property.  Because the cars constituted a safety hazard and an eyesore, NYSW directed Ron Delevan to move them.  Richard Hensel, NYSW's Vice President of Engineering, placed multiple phone calls to Ron Delevan asking him to move the five Damaged Railcars.  Deposition Transcript of Richard Hensel, p. 26, attached to the Wright Dec. as Exhibit G ("Hensel Dep. Tr.").

Eventually, Ron Delevan requested a contactor safety meeting so that his employees could be trained on safe dismantling and/or removing the five Damaged Railcars.  Declaration of Richard Hensel, dated December 5, 2011 ("Hensel Dec."), Ex. A.  NYSW's track supervisor, Wayne Dunckel provided the requested training to RMDI's employees on March 2, 2009.  Declaration of Wayne Dunckel, dated December 5, 2011 ("Dunckel Dec."), ¶ 2.

RMDI allegedly entered into a contract with Diesel Electric to restore and sell four of the Damaged Railcars.  No one ever made NYSW aware of this alleged contract, and RMDI never sold the cars

10

to Diesel Electric or any other entity.  Delevan Dep. Tr., p. 113;
Rathbone Dec., ¶ 18; Hensel Dec., ¶ 6; Dunckel Dec., ¶ 4.

NYSW's Chief Financial Officer, Tabetha Rathbone, emailed
Ron Delevan multiple times requesting that RMDI remove the
Damaged Railcars, but he failed to do so, and the cars remained
stored on NYSW's property.  Rathbone Dec., ¶¶12-13, 16, Ex. J-K.
Accordingly, storage fees accrued under Freight Quote 4215.  As the
new owner of the five damaged cars, RMDI became liable to NYSW
for these storage fees in the amount of forty dollars per day.

NYSW sent monthly invoices to RMDI covering the accruing
storage fees.  Although RMDI acknowledged receipt of the invoices
and did not object to them, it failed to pay the storage fees.  As of
NYSW's November 4, 2010 invoice, RMDI owed $138,803.50 in
storage fees.  To date, none of these fees have been paid.  Rathbone
Dec., ¶¶14-15, Ex. L; Delevan Dep. Tr., p. 108.  Eventually, RMDI
scrapped one of the five Damaged Railcars.  However, the other four
remain on NYSW's property to this day.  Delevan Dep. Tr., p. 102;
Hensel Dep. Tr., p. 26-27; Deposition Transcript of Nathan R.
Fenno, p. 65, attached to the Wright Dec. as Exhibit F; Wright Dec.,
Ex. L.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The substantive law identifies which facts are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party."  Computer Support, Inc. v. Booker Transportation Services, Inc., 2009 U.S. Dist. LEXIS 81790 at *11-12 (M.D. Pa. 2009).

## ARGUMENT

**I.  NYSW IS ENTITLED TO JUDGMENT ON ITS COUNTERCLAIMS FOR STORAGE FEES, BECAUSE THERE IS NO TRIABLE ISSUE OF FACT REGARDING RMDI'S OBLIGATION TO PAY FOR STORAGE OF THE FIVE DAMAGED RAILCARS OR ITS FAILURE TO MAKE THE REQUIRED PAYMENTS TO NYSW.**

    A.    NYSW is entitled to summary judgment on its breach of contract counterclaim.

Freight Quote 4215 provided for daily storage fees related to the Railcars.  Power Source accepted these storage fees in consideration for NYSW transporting Power Source's 34 Railcars along its railway.  Originally, Power Source, as the owner of the Railcars was obligated to remit the storage fees to NYSW.  Storage fees were taken into account in the eventual settlement of the derailment issue between Power Source and NYSW.  Indeed, as part of the settlement, Power Source paid $69,648.60 for storage of the Railcars through September 30, 2006.  See Rathbone Dec. Ex., G.

In 2007, RMDI assumed ownership of the five Damaged Railcars from Power Source, and thereby assumed the storage fee obligation for those cars.  See Wright Dec., Ex. D  At the time RMDI became the owner of the Railcars, the daily storage rate was $40 per day.  See Rathbone Dec., Ex. J, K.

NYSW put RMDI on notice of its storage obligation and advised that if the Railcars were not moved, storage would be assessed. RMDI failed to remove its Damaged Railcars from NYSW's property, and, thus, in January of 2009, NYSW began to charge RMDI for storage pursuant to Freight Quote 4215 and its published Tariff. Rathbone Dec., ¶¶12-15.

13

RMDI admits that it agreed to remit storage charges to NYSW for storage of the damaged Railcars.  See Plaintiffs' Answer to Defendant's Counterclaims (Docket #37, ¶ 16).  NYSW performed under this agreement by storing the Railcars on its property. RMDI incurred storage fees of $138,803.50 and failed to pay any of this obligation to NYSW thereby breaching the storage contract. Accordingly, NYSW is entitled to summary judgment on its breach of contract Counterclaim against RMDI.

> B.     NYSW is entitled to summary judgment on its
> unjust enrichment counterclaim.

Alternatively, NYSW is entitled to judgment for RMDI's storage debt, based on the doctrine of unjust enrichment.  "The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Serafini, et al., v. Mariani, 2010 U.S. Dist. LEXIS 31819, at *24 (M.D. Pa. 2010) (*quoting* Styer v. Hugo, 422 Pa. Super. 262 (1993).

Here, NYSW enriched RMDI by storing RMDI's Damaged Railcars on NYSW's property and RMDI accepted the benefits of NYSW's storage.  It would be unjust to allow RMDI to retain the benefit of having its Railcars stored without paying NYSW for this benefit.  Accordingly, NYSW is entitled to summary judgment on its unjust enrichment counterclaim.

C.   NYSW is entitled to summary judgment on its
account stated counterclaim.

NYSW is also entitled to judgment as a matter of law on its storage claim against RMDI based on the account stated doctrine. NYSW sent RMDI twenty-three monthly invoices for storage from January 2009 through November 2010 totaling $140,000.00. Invoice #3576 was offset with $1,196.50 in monies due RMDI from NYSW.  Thus, the total amount owed by RMDI for storage is $138,803.50.  (See NYSW Statement of Account, dated December 2, 2010, attached as Exhibit F to NYSW's Verified Petition, which was filed with the Utica City Court to commence the eviction proceeding against plaintiffs, and is attached to the Wright Dec. as Exhibit H.) This amount is admitted by plaintiffs.  plaintiffs' Answer to Defendant's Counterclaims (Docket #37, ¶ 27).

"An account stated is an account in writing, examined and expressly or impliedly accepted by both parties ... The essence of an account stated is that there is an agreement to, or acquiescence in the correctness of the account, so that in proving the account stated, it is not necessary to show the nature of the original transaction or indebtedness ... The retention without objection by one party for an unreasonably long time of a statement of account rendered by the other is a manifestation of assent to the amount shown as an accurate computation of the amount due." Connoly Epstein Chicco Foxman Engelmyer & Ewing v. Shotz, Miller, Glusman, Footer & Magarick, P.C., 1995 U.S. Dist. LEXIS 17231 at *12-13 (E.D. Pa 1995).

Here, RMDI received, retained, and accepted each of the twenty-three invoices without objection.[2] Rathbone Dec., ¶ 15. Moreover, RMDI received, retained, and accepted without objection NYSW's December 2, 2010 statement of account which also set forth the invoices and the total amount of $138,803.50, which was

---

[2] Although Ron Delevan claimed at his deposition that he objected to the storage invoices, this conclusory assertion is belied by the record evidence, including Ron Delevan's own email showing that he accepted and acquiesced to the storage invoices. See Rathbone Dec., Ex. I: January 15, 2009 email from Ron Delevan to Tabetha Rathbone, Bates # 000072 ("Received car storage bill."). This unsupported claim is insufficient to withstand summary judgment. See Computer Support, Inc. v. Booker Transportation Services, Inc., 2009 U.S. Dist. LEXIS 81790 at *12 (M.D. Pa. 2009) ("Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.")

past due.  <u>Wright Dec.</u> Ex. H (Ex. "f").  Accordingly, RMDI is liable to

NYSW in the amount of $138,803.50, plus interest and summary

judgment should be granted on NYSW's account stated claim.

## II.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED, BECAUSE NYSW WAS NOT UNJUSTLY ENRICHED AND THE CLAIM IS PRECLUDED BY THE PRIOR NEW YORK JUDGMENT AND BASED ON ESTOPPEL.

### A.   NYSW was not unjustly enriched, as there was an underpayment of rent by plaintiffs, not an <u>overpayment</u>.

Count I of the Complaint alleges unjust enrichment based on

an alleged overpayment of rent by plaintiffs for its use of the

Premises.

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value … [T]he most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff.

<u>Serafini, et al., v. Mariani</u>, 2010 U.S. Dist. LEXIS 31819, at *24

(M.D. Pa. 2010) (*quoting* <u>Styer v. Hugo</u>, 422 Pa. Super. 262 (1993).

17

Since plaintiffs admit there was no overpayment of rent to NYSW, there was no benefit conferred to NYSW by plaintiffs. Plaintiffs acknowledged an amendment to their monthly rental obligation under the Interim Operating License.  Instead of a monthly obligation of $1,500.00 plus 5% of its gross profits, the parties agreed to amend the monthly rental obligation to $2,500.00 with no gross profit requirement.  Delevan Dep. Tr., pp. 46, 49, 55-56.

Plaintiffs failed to make the requisite rental payments related to the Premises.  Because of this, NYSW brought an eviction proceeding in Utica City Court, New York State and sought a judgment for back rent.  Plaintiffs entered into a confession of judgment acknowledging rental arrears of $20,000.00 to NYSW.

Accordingly, NYSW was not unjustly enriched and plaintiffs' claim must be dismissed as a matter of law.  See Stoeckinger v. Presidential Financial Corp. of Delaware, 948 A.2d 828, 834 (Pa. Sup. Ct. 2008) ("[W]e conclude that as a matter of law, Stoeckinger has failed to show that Presidential's collection of the USCG receivable was unjust.  This failure alone is fatal to Stoeckinger's claim for unjust enrichment.")

B.    Plaintiffs' unjust enrichment claim is precluded by
the prior New York judgment for rental arrears
<u>under the Lease.</u>

The confession of judgment and judgment by confession
entered in the Utica City Court, New York State preclude plaintiffs'
claim here.  The Full Faith and Credit statute, 28 U.S.C. § 1738,
requires that a Pennsylvania Federal District Court give a prior New
York judgment the same effect as would a New York court.  <u>Brown
v. CRK Contracting of Suffolk, Inc.</u>, 100 F. Supp.2d 323, 325 (E.D.
Pa 2000).  Thus, this Court is required to look to New York law
regarding the preclusive effect of the Utica City Court rental
judgment.  <u>See</u> <u>Id.</u>

Under New York law, a judgment by confession, similar to a
consent judgment, bars relitigation of issues resolved by the
judgment.  <u>Prudential Lines, Inc. v. Fireman's Insurance Company
of Newark, et al.</u>, 91 A.D.2d 1, 3 (1st Dept. 1982); <u>Canfield v. Harris,</u>
252 N.Y. 502, 505 (1930).  It is a conclusive adjudication of all
matters embraced in it and has the same force and effect as a
judgment after trial.  <u>Id.</u>; <u>See also</u> <u>Moore v. Deal</u>, 240 F. Supp.
1004, 1006 (E.D. Pa. 1965) ("The rule is well settled that a valid and
final judgment rendered in an action to recover money is conclusive

19

between the parties in a subsequent action on a different claim as to issues actually determined in the prior action. … [T]he rule applies equally to judgments rendered by consent of the parties.")

Here, the issue of rent due under the Lease has already been resolved in the Utica City Court, New York State matter.  Plaintiffs admitted in a confession of judgment that they owed $20,000.00 in rent to NYSW.  This admission culminated in a $20,000.00 judgment against plaintiffs in favor of NYSW.  Plaintiffs' claim here that they overpaid rent under the Lease and are owed money by NYSW is therefore precluded by the prior judgment and must be dismissed.

C.   <u>Plaintiff's cannot make out a triable unjust enrichment claim based on the doctrine of estoppel.</u>

"Estoppel applies when a party, with sufficient notice and means of knowledge, remains inactive, acquiesces, or otherwise abstains from impeaching a contract or challenging a transaction." <u>Connoly Epstein Chicco Foxman Engelmyer & Ewing v. Shotz, Miller, Glusman, Footer & Magarick, P.C.</u>, 1995 U.S. Dist. LEXIS 17231 at *11 (E.D. Pa 1995).

As set forth above, in 2002 the parties agreed to amend the amount of rent due under the Lease, and NYSW began invoicing plaintiffs $2,500.00 on a monthly basis.  Plaintiffs never objected to these invoices, which continued through 2011.  Instead, plaintiffs periodically paid the invoices, less amounts due from NYSW for locomotive work.  Plaintiffs made no payments for gross profits. Fenno Dec., ¶ 15.  Plaintiffs are therefore estopped from claiming that monthly rent at the Premises did not equal $2,500.00 and that they overpaid for rent.  See Connoly Epstein Chicco Foxman Engelmyer & Ewing, 1995 U.S. Dist. LEXIS 17231 at *11 ("Defendants failure to object to plaintiff's bills or staffing procedures estops them from challenging such practices now.")

### III.  PLAINTIFFS' NEGLIGENCE CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

In Count II of the Complaint plaintiffs allege that they were to receive a commission on the sale of the thirty-four Railcars.  It alleges that NYSW negligently caused the derailment of five of those Railcars, which in turn allegedly resulted in the cancellation of the purported sale of the thirty-four Railcars, resulting in the alleged loss of plaintiffs' purported commission.

This baseless claim must be dismissed as a matter of law for five independent and alternative reasons: (1) no cause of action exists based on negligence that causes only economic loss; (2) the negligence claim is barred by the statute of limitations; (3) NYSW did not owe a duty of care to plaintiffs; (4) NYSW settled the derailment issue with the owner of the cars—Power Source— and was released from any and all liability; and (5) plaintiffs voluntarily agreed to accept the five Damaged Railcars in lieu of the commission.

> A.    Plaintiffs cannot maintain a negligence claim seeking only economic loss.

Plaintiffs claim that NYSW's alleged negligence caused plaintiffs to lose a purported commission when a prospective sale of the railcars was cancelled.  Thus, plaintiffs are alleging solely economic loss, based on NYSW's alleged negligence.  Such a claim cannot be maintained.

Under Pennsylvania law, "no cause of action exists for negligence that causes only economic loss." Aikens v. Baltimore and O.R. Co., 348 Pa. Super. 17, 22 (1985).  This doctrine, known as the "economic loss doctrine" is "concerned with two main factors:

foreseeability and limitation of liability."   Azur v. Chase Bank,

USA, 601 F.3d 212, 222 (3d Cir. 2010).

> The first Pennsylvania appellate court to discuss the
> doctrine explained: 'to allow a cause of action for
> negligent cause of purely economic loss would be to
> open the door to every person in the economic chain
> of the negligent person or business to bring a cause
> of action.  Such an outstanding burden is clearly
> inappropriate and a danger to our economic system.'

Azur v. Chase Bank, USA, 601 F.3d 212, 222-223 (3d Cir. 2010)

(*quoting* Aikens v. Baltimore and O.R. Co., 348 Pa. Super 17 (Pa.

Super 1985).

Accordingly, plaintiffs' negligence claim must be dismissed.

See Aikens v. Baltimore and O.R. Co., 348 Pa. Super. 17, 22 (Pa.

Super. 1985) ("Given this Court's finding today that no cause of

action exists for negligence which results in only economic loss,

judgment on the pleadings is proper, and appellants' arguments are

meritless.")

    B.   Plaintiffs' negligence claim is barred by
          Pennsylvania's two-year statute of limitations.

Plaintiffs' negligence claim accrued in 2006 and is therefore

time-barred.  "Under Pennsylvania law, there is a two-year statute

of limitations on all negligence claims."   Metso Paper USA, Inc. v.

<u>Bostik, Inc.</u>, 2011 U.S. Dist LEXIS 73629 at *9 (M.D. Pa. 2011)
(*citing* 42 Pa.C.S. § 5524).  "As a general rule, the statute of
limitations begins to run when the plaintiff's cause of action
accrues."  <u>New Castle County v. Halliburton Nus Corp.</u>, 111 F.3d
1116, 1124 (3d Cir. 1997) (internal citation omitted).  Here, the
alleged negligent act upon which plaintiffs' claim is predicated – the
derailment— occurred on July 19, 2006.

The rail cars transported by NYSW that were not involved in
the derailment were sold by their owner – Power Source – on
September 25, 2006 to UTA.  Ron Delevan made NYSW aware of
this sale on October 2, 2006.  As such, whatever sale plaintiffs
contend was cancelled as a result of the derailment, occurred
sometime between the derailment on July 19, 2006 and the actual
sale of the cars on September 25, 2006.  Thus, plaintiffs' purported
"damage" was incurred sometime within that timeframe.

Accordingly, plaintiffs' purported negligence claim accrued, for
statute of limitations purposes, on July 19, 2006 or, at the very
latest, sometime between July 19, 2006 and September 25, 2006.
Plaintiffs did not file the Complaint in this action until December
16, 2010, more than four years after accrual of the negligence

24

claim.  As such, plaintiffs' negligence claim is time barred, and must be dismissed a matter of law.

C.    NYSW did not owe a duty of care to plaintiffs.

To maintain a negligence claim, a plaintiff must establish that he was owed a legal duty by the defendant.  Drames v. Sun River Investment, 820 F.Supp. 209, 212 (E.D. pa 1993).  At the time of the derailment, Power Source owned the Railcars.  To the extent NYSW had a duty of care with respect to transporting the Railcars, its duty of care was owed to Power Source, not plaintiffs.  Therefore, plaintiffs cannot maintain a negligence claim against NYSW.

D.    NYSW settled the derailment issue with the owner of the cars and was released from any and all liability.

As set forth above and in the accompanying declaration of Tabetha Rathbone, NYSW settled the derailment issue with Power Source - the owner of the cars that were derailed.  Ron Delevan was aware that Power Source had alleged negligence on the part of NYSW with respect to the derailment, as he was copied on various emails between Power Source and NYSW regarding this issue.  See Rathbone Dec., Ex., E.  Power Source and NYSW subsequently settled the derailment issue, and Power Source released NYSW from

any and all liability with respect to the damaged cars.  <u>Rathbone</u>

<u>Dec.</u>, ¶ 7; Ex., G.  As such, plaintiffs' claim must be dismissed.

      E.    Plaintiffs did not lose a $150,000.00 commission as
           <u>a result of the derailment.</u>

Plaintiffs' President and sole shareholder Ron Delevan testified

that he entered into an agreement with Power Source  whereby

Power Source transferred ownership of the five Damaged Railcars to

RMDI in lieu of a $187,000.00 commission RMDI was to receive

upon the sale of the remaining twenty-nine Railcars to UTA.

<u>Delevan Dep.</u>, pp. 73-74.  Thus, by plaintiffs own admission, they

did not lose a $150,000.00 commission as a result of the

derailment.  Rather, Ron Delevan entered into a voluntary

agreement with Power Source whereby RMDI took ownership of the

Damaged Railcars in lieu of the anticipated commission from Power

Source.

## IV.   PLAINTIFFS' CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT MUST BE <u>DISMISSED AS A MATTER OF LAW.</u>

Count III of the Complaint for intentional interference with

contractual relationship must be dismissed because (1) NYSW did

not prohibit RMDI from removing the Damaged Railcars; (2)  NYSW

was not aware of RMDI's alleged contract to renovate and sell four of the Damaged Railcars to Diesel Electric; and (3) even if plaintiffs had proffered admissible evidence that NYSW somehow prohibited RMDI from moving the Damaged Railcars, and was aware of the alleged contract with Diesel Electric at the time it prohibited such removal, there is still no evidence that NYSW intentionally prohibited the removal in order to intentionally harm RMDI's alleged contractual relationship with Diesel Electric.

"Under Pennsylvania law, a plaintiff claiming tortious interference with contractual relations must prove: (1) the existence of a contractual relation between itself and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual damages as a result of the defendant's conduct." Lawson v. CSX Corporation and CSX Transportation, Inc., 1999 U.S. Dist. LEXIS 14923, at *7 (E.D. Pa. 1999) (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998)).

It is well settled that where the competent evidence of record establishes that the defendant was not aware of the alleged contract

27

alleged to have been interfered with, a claim for tortious interference or intentional interference with contractual relationship must be dismissed as a matter of law.  See Lawson, 1999 U.S. Dist. LEXIS at * 10 ("Moreover, even assuming the existence of a contractual relationship, one could not reasonably find from the competent evidence of record that CSX engaged in a purposeful action specifically intended to harm such a contractual relationship.  Intent may be shown where the actor knows an injury is certain or substantially certain to occur as a result of his action.  An actor cannot know an injury is certain or substantially certain to occur when he does not know of the existence of a contractual relationship."); PSC Info Group v. Lason, Inc., 681 F. Supp. 2d 577, 596 (E.D. Pa. 2010) ("PSC's tortious interference claim against Lason, however, fails as a matter of law.  As noted above, intent is an essential element of a tortious interference claim … PSC has not identified any evidence showing that Lason was aware of the contract between BACS and PSC until after BACS transferred its business to Lason.  I will therefore grant defendant's motion for summary judgment on PSC's tortious interference claims against Lason.").

Here, the competent evidence of record establishes that NYSW was not aware of any alleged contractual relationship between RMDI and Diesel Electric.  <u>See</u> <u>Delevan Dep. Tr.</u>, p. 113; <u>Rathbone Dec.</u>, ¶ 18; <u>Hensel Dec.</u>, ¶ 6; <u>Dunckel Dec.</u>, ¶ 4.  Accordingly, for this reason alone, plaintiffs' claim must be dismissed.

The closest plaintiffs come to making out a triable claim for intentional interference with contractual relationship is through plaintiffs' unsupported allegation that NYSW prohibited them from moving the Damaged Railcars.  This claim is refuted by the record evidence, as NYSW repeatedly requested that Ron Delevan move the Damaged Railcars, but he never did.  <u>See</u>, e.g. <u>Rathbone Dec.</u>, ¶¶ 12-13, 16-17.  In any event, even assuming, *arguendo*, that an issue of fact exists regarding whether NYSW prohibited plaintiffs from moving the Damaged Railcars, plaintiffs' claim must still be dismissed because the competent evidence of record establishes NYSW was unaware of the alleged Diesel Electric Contract.

Furthermore, as stated above, even if NYSW did prohibit plaintiffs from moving the Damaged Railcars and was aware of the alleged Diesel Electric contract, there is no evidence—*none whatsoever*— that NYSW intentionally prohibited plaintiffs from

29

moving the Damaged Railcars with the purpose of harming plaintiffs' contractual relationship with Diesel Electric.

Accordingly, for the foregoing reasons, summary judgment is fully warranted on plaintiffs' claim for intentional interference with contractual relationship.

## V.   PLAINTIFFS HAVE FAILED TO MAKE OUT A TRIABLE ASSUMPSIT CLAIM.

Count IV of the Complaint alleges that NYSW owes plaintiffs $38,999.86 for "work performed by plaintiffs on behalf of Defendant." Complaint, ¶ 24. During discovery, plaintiffs produced the document they purport to base this claim on—an NYSW Statement of Account sent to plaintiffs. See Rathbone Dec. Ex. P. As is set forth in paragraphs 20-27 of the accompanying Declaration of Tabetha Rathbone, NYSW does not owe plaintiffs any money. Indeed, the statement of account plaintiffs rely upon for this claim shows that plaintiffs owe NYSW money. See Rathbone Dec., Ex. P. Accordingly, Count IV of the Complaint must be dismissed as a matter of law.

## **CONCLUSION**

For the foregoing reasons, this Court should grant NYSW summary judgment on its Counterclaims for storage fees in the amount of $138,803.50 plus statutory interest and costs, dismiss plaintiffs' Complaint in its entirety and with prejudice, and grant any other relief deemed just and proper.


Dated:  January 6, 2012            BOND, SCHOENECK & KING, PLLC

                                   By:  _s/ James P. Wright, Jr._____
                                        Edward R. Conan
                                        (NY 1735034) (pro hac vice)
                                        James P. Wright, Jr.
                                        (NY 4651394) (pro hac vice)
                                        One Lincoln Center
                                        Syracuse, New York 13202
                                        Telephone: (315) 218-8000
                                        Fax: (315) 218-8100
                                        Email: econan@bsk.com
                                               jwright@bsk.com
                                        -and-

                                   CAVERLY, SHEA, PHILLIPS and
                                   RODGERS
                                   Charles A. Shea, III
                                   15 Public Square
                                   Suite # 210
                                   Wilkes-Barre, PA 18701
                                   Telephone: (570) 823-0101
                                   Fax: (570) 825-7799
                                   Email: cashea@epix.net

                                   *Attorneys for Defendant New York*
                                   *Susquehanna and Western Railway*
                                   *Corporation*

31